IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

REGIONS BANK,                           *
                                        *
               Plaintiff,          *
vs.                                *       No. 4:16-cv-00078-SWW
                                        *
                                        *
ARBERTDELLA LAMB and          *
NANCY HAMPTON, as Administratrix    *
for The Estate of Willie Townsel,      *
                                        *
             Defendants.       *

_____

NANCY HAMPTON, as Administratrix    *
for The Estate of Willie Townsel,      *
                                        *
             Cross-Claimant,   *
vs.                                *
                                        *
ARBERTDELLA LAMB,             *
                                        *
             Cross-Defendant.    *

OPINION AND ORDER

Regions Bank, an Alabama Banking Corporation, brought this interpleader action

pursuant to Federal Rule of Civil Procedure 22 to resolve competing claims of ownership

of funds in the amount of $80,677.87 that were on deposit in a checking account with

Regions (Account No. xxxx-0886) but have now been paid into the registry of the Court.[1]

_____

[1] Rule 22 states that persons "with claims that may expose a plaintiff to double or
multiple liability may be joined as defendants and required to interplead ... even though ... (A)
the claims of the several claimants, or the titles on which their claims depend, lack a common
origin or are adverse and independent rather than identical; or (B) the plaintiff denies liability in

Nancy Hampton, an Arkansas resident and Admistratix for the Estate of Willie Townsel, a deceased former resident of Arkansas, and ArbertDella Lamb, also an Arkansas resident, both claim ownership of the funds.[2]  Hampton has filed a cross-claim against Lamb claiming that she is the rightful owner of the funds.  Regions has since been discharged from this action.

Now before the Court is a motion of Lamb for summary judgment [doc.#37]. Hampton has responded in opposition to Lamb's motion and Lamb has filed a reply to Hampton's response.  For the reasons that follow, the Court grants Lamb's motion for summary judgment.

## I.

On May 18, 2009, Townsel and Lamb opened a checking account–Account No. xxxx0886–with Regions.  The account was titled "Willie Townsel or ArbertDella Lamb." Townsel and Lamb were brother and sister.  Hampton was Townsel's daughter.

The contractual rights and duties of Regions, Townsel, and Lamb with respect to

---

whole or in part to any or all of the claimants."  Fed. R. Civ. P. 22(a)(1)(A)(B).  Rule 22 is designed to protect stakeholders not only from double or plural liability but also from duality or plurality of suits, and the rule is to be construed liberally.  *Sun Life Assur. Co. of Canada v. Nelson*, No. 5:15cv00023 JLH, 2015 WL 3442178, at *2 (E.D. Ark. May 28, 2015) (citation and quotation marks omitted).

[2] Rule 22 interpleader does not provide an independent basis for jurisdiction but can be premised on the diversity statute, 28 U.S.C. § 1332.  *Federated Mutual Ins. Co. v. Moody Station and Grocery*, 821 F.3d 973, 976 (8th Cir. 2016) (citation and quotation marks omitted). Jurisdiction is determined based on the parties' status at the time the action is filed, see *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004), and it is undisputed that diversity jurisdiction exists here.

the account were set forth in a written Deposit Agreement.  The Deposit Agreement

provides in pertinent part as follows:

> If your account is a personal account and has more than one name on it, we
> will treat it as a joint tenant account with right of survivorship (to the extent
> such accounts are recognized under applicable law) unless otherwise
> expressly designated on the signature card or other account records.

Deposit Agreement at ¶ 23.

On April 4, 2014, Townsel died at age 66.  Approximately three weeks later, on

April 23, 2014, Lamb presented Townsel's death certificate to Regions and requested that

the account be changed to her name alone.  Regions granted Lamb's request after

searching its account records and not finding any express designation or any other

evidence that would alter the presumption that the account at all times was a joint tenant

account with right of survivorship (JTWRS).

On April 28, 2014, Hampton petitioned the Circuit Court of Crittenden County,

Arkansas, to administer Townsel's estate and be appointed his personal representative.

On April 30, 2014, the circuit court granted Hampton's petition and appointed her

administratrix of Townsel's estate.[3]  The following day, May 1, 2014, Regions received

written demand from Ronald Wilson, an attorney representing Hampton, that the account

be "frozen" until the rightful owners of the account funds could be determined by a state

---

[3] In her petition to administer Townsel's estate and be appointed his personal
representative, Hampton stated that in addition to herself, Townsel had two other adult
daughters: Pamela Donnerson and Elisha Simmons Townsel.  In her deposition, Hampton stated
that Donnerson and Elisha Townsel are not her sisters.

court.

By letter dated June 24, 2014, Eric Buchanan, an attorney representing Lamb, informed Regions that because Townsel and Lamb owned the account JTWRS, Lamb became the sole owner of the account when Townsel died.  Buchanan asked Regions "[o]n what legal authority has the account being [sic] seized?"

In an email to Wilson dated July 22, 2014, Regions informed Wilson that the account was being treated as JTWRS and that it was not aware of any basis to abide by his request that the account be frozen.  Regions requested that Wilson either reiterate and detail his request that Regions leave the freeze on the account or that he withdraw his request.  When Wilson did not respond, Regions, by email dated August 5, 2014, informed him that it would appreciate an update on the matter and that if it did not hear from him, Regions would evaluate its options on moving forward without his input.

In an email to Regions dated August 14, 2014, Wilson stated he was informed that Townsel left a Last Will and Testament which he was attempting to locate and that the best course of action was to interplead the account funds in state court until it could be determined who was the rightful owner of the funds.  However, in her petition to the circuit court to administer Townsel's estate, Hampton stated that Townsel died intestate. In granting Hampton's petition, the circuit court likewise stated that Townsel died intestate.  In her cross-claim against Lamb, Hampton does not mention a will but states she is the rightful owner of the funds "based on a constructive trust theory and other applicable common law and statutory law."

By letter dated August 15, 2014, Buchanan, referencing Hampton's petition to the circuit court to administer Townsel's estate and the circuit court's order granting same, informed Regions that Townsel died intestate and that because the Deposit Agreement required the account to be treated as JTWRS, it was unnecessary to interplead the funds. Buchanan stated he was concerned that the claim of a will was simply a delay tactic to keep Lamb from accessing the funds.

The Deposit Agreement provides that in the event of a dispute "about who owns or is entitled [to] any funds on deposit in an account," Regions has the following rights:

> At our option, however, we may place a "hold" on funds until resolution of the controversy, or we may accept an indemnity satisfactory to us, or we may deposit the funds with a court until a court order directs us to do otherwise.  If we incur attorneys' fees, costs or expenses to resolve the issues specified in this paragraph, you agree to reimburse us for those sums we incur.

Deposit Agreement at ¶ 33.[4]

On September 3, 2014, Regions filed an interpleader action in the Circuit Court of Cross County, Arkansas, against Hampton and Lamb to determine ownership of the funds.  Regions later moved for interpleader.  Hampton agreed to interpleader of the funds and to Regions's dismissal from the state court interpleader action.  Lamb opposed both Regions's request for interpleader and for dismissal from the state court interpleader action.  Lamb's view was that interpleader was unnecessary because Regions admitted

---

[4] See also Deposit Agreement at ¶ 36 (providing for reimbursement of attorney's fees and costs "in connection with . . . (ii) any ownership or authority disputes regarding [the] account").

that Lamb was the rightful owner of the account by JTWRS and therefore either had no authority to place the hold on Lamb's account or, alternatively, caused its own asserted detriment by placing the hold on the account and thus should be responsible for its own costs, expenses and attorney's fees.

On February 5, 2016, eleven months after it moved for interpleader, Regions filed a motion for voluntary dismissal of its state court interpleader action. In so moving, Regions noted that the parties have answered but that there has been no ruling on the motion for interpleader and that the case has not been set for trial or hearing to determine ownership of the funds.[5] The court granted Regions's motion and, on February 11, 2016, dismissed the state court interpleader action over Lamb's opposition.

On February 12, 2016, one day after the state court interpleader action was dismissed, Regions filed the interpleader action now before the Court and requested permission to deposit the funds into the registry of the Court. In her answer, Lamb denied that Regions has a contractual right to interpleader under the circumstances. Nevertheless, on March 24, 2016, Lamb filed a motion for a declaratory judgment asking the Court to declare that she is the rightful owner of the funds. Because Lamb asked the Court to resolve the dispute underlying this interpleader action despite earlier denying that Regions has a contractual right to interpleader, the Court, on March 31, 2016, granted Regions's request to deposit the funds into the registry of the Court.

---

[5] Apparently, the presiding judge died while the action was pending and a new judge was later appointed.

By Order entered April 21, 2016, the Court denied Lamb's motion for a declaratory judgment.  In so ruling, the Court determined that while it "agrees with Lamb that Hampton's response to her motion for declaratory judgment is lacking, citing no authority and consisting in large part of simple denials of Lamb's claims, there are several issues, including the constructive trust issue, that the Court is unable to resolve on the basis of the record as it now stands."

On July 22, 2016, Regions filed a motion seeking to be discharged from this interpleader action and for an award of attorney's fees and costs to be paid from the interpleaded funds.  By Order entered September 8, 2016, the Court granted Regions's motion, discharging Regions from this interpleader action and awarding Regions $7,565.00 in attorney's fees and costs to be paid from the interpleaded funds.  See *Regions Bank v. Lamb*, No. 4:16-cv-00078-SWW, 2016 WL 4707995 (E.D. Ark. Sept. 08, 2016).  Thereafter, Lamb filed the motion for summary judgment now before the Court.

## II.

Lamb moves for summary judgment on grounds that Hampton has failed to provide any basis to support the constructive trust theory under which she claims ownership of the account and its interpleaded funds.  Lamb requests that the Court enter an order declaring her the rightful owner of the account and the interpleaded funds by JTWRS.

## A.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," or show "that the materials cited do not establish the absence or presence of a genuine dispute," or "that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)-(B).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (citations omitted).  Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and quotation marks omitted).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita,* 475 U.S. at 587 (citation omitted).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id*.

## B.

Hampton advances two arguments in opposition to Lamb's motion for summary

-8-

judgment: (1) Lamb has not produced credible evidence that she was a co-owner or joint tenant with right of survivorship to the account funds; and (2) the evidence establishes that a constructive trust should be imposed in regard to the account funds.  The Court will address these arguments in turn.

1.

Hampton first argues that "Lamb has failed to produce a signature card or Personal Account Maintenance Form signed by Townsel or her in regard to Townsel's opening his 'new account' at Regions Bank on or about May 18, 2009," and that "[t]his failure is fatal to Lamb's argument that she was a co-owner and/or a joint tenant with right of survivorship on Townsel's account because signing the signature card is how depositors (customers) enter into a contract with Regions and agree to accept the terms of Regions' Deposit Agreement."  In support of this argument, Hampton relies on an affidavit from Scottie Lackland, "Assistant Vice President for Regions Bank in the West Memphis Branch of said bank located in West Memphis, Arkansas," in which Lackland states he "has not been able to locate a 'signature card' or Personal Account Maintenance and Signature Form for the ... personal checking account" at issue.

The Court rejects Hampton's argument that Lamb has failed to show that she was a co-owner of the account.  Lackland may have been unable to locate a signature card or Personal Account Maintenance and Signature Form for the account but he does not say what efforts he expended to locate those records or that the records don't exist.  In any case, Lamb has submitted a Personal Account Maintenance and Signature form showing

that on April 23, 2014, Regions deleted Townsel from the account and made Lamb the account's sole owner.  Regions further acknowledges that Townsel and Lamb opened the account together, that the account was titled "Willie Townsel or ArbertDella Lamb" (with checks corresponding to that title), and that the contractual rights and duties of Regions, Townsel, and Lamb with respect to the account were set forth in the written Deposit Agreement.  Compl. ¶¶ 7, 11.  Hampton acknowledges in her affidavit that Townsel told her that he had placed Lamb on his account in 2009 and, as previously noted, the Deposit Agreement provides that "[i]f your account is a personal account and has more than one name on it, we will treat it as a joint tenant account with right of survivorship (to the extent such accounts are recognized under applicable law) unless otherwise expressly designated on the signature card or other account records."  Deposit Agreement at ¶ 23. Hampton has not submitted a "signature card or other account records" showing that the account was anything other than JTRWS, and as the surviving joint tenant of the account, Lamb owns the funds in the account by operation of law in the absence of fraud. *Williams v. Davis*, 2009 Ark. App. 850, at *7-8, 373 S.W.3d 381, 386 (citing Ark. Code Ann. §§ 23-32-207 and 23-47-204).  Nothing in the record evidences fraud.

2.

Hampton also argues that a constructive trust is appropriate and necessary to prevent the wrongful disposition by Lamb of the account funds–funds that Hampton states rightfully belong to herself and the estate.  She argues that Townsel was not well-educated and needed help with his personal and business affairs because of his health and

vision problems and that Townsel placed his trust in Lamb, who attempted to take advantage of Townsel's trust.  Hampton argues that "[u]nfortunately, Townsel's trust in Lamb was misplaced and we are left with this Court to prevent the unjust enrichment of Lamb."

A constructive trust is a remedial rather than a substantive institution.  *Betts v. Betts*, 326 Ark. 544, 547, 932 S.W.2d 336, 337 (1996) (citation omitted).  Such trusts arise whenever it appears from the accompanying facts and circumstances that the beneficial interest should not go with the legal title.  *Id.* (citation and quotation marks omitted).  Thus, a constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that she would be unjustly enriched if she were permitted to retain it.  *Id.*  The duty to convey the property may arise because it was acquired through fraud, duress, undue influence or mistake, breach of a fiduciary duty, or wrongful disposition of another's property.  *Id.*  Fraud or a confidential relationship is necessary to prove a constructive trust.  *Wright v. Union Nat. Bank of Arkansas, Little Rock, Ark.*, 307 Ark. 301, 305, 819 S.W.2d 698, 701 (1991).  A confidential relationship exists between two persons when one has gained the confidence of the other and purports to act or advise with the other's interest in mind.  *Henry v. Goodwin*, 266 Ark. 95, 98, 583 S.W.2d 29, 31 (1979) (citation omitted).  See also *Wright*, 307 Ark. at 305, 819 S.W.2d at 701 ("although a family relationship by itself is not sufficient to establish a constructive trust, in the absence of estrangement or other circumstances contradicting confidentiality, a confidential relationship may be established

-11-

by showing a close relationship between a mother and father and a brother and sister.").

To impose a constructive trust, there must be full, clear and convincing evidence leaving

no doubt with respect to the necessary facts.  *Betts*, 326 Ark. at 548, 932 S.W.2d at 338.

The burden of proof of establishing a constructive trust is upon the requesting party.

*Lucas v. Grant*, 61 Ark. App. 29, 33, 962 S.W.2d 388, 390 (1998).  See also *Wright*, 307

Ark. at 305, 819 S.W.2d at 701 (the burden of proving fraud or a confidential relationship

"is on the proponent of the constructive trust.").

   In her affidavit, Hampton states only that "My father ... told me that he had placed

[Lamb] on his bank account in 2009 because he needed help taking care of his personal

and business affairs due to his bad health and impaired vision."  There is, however,

nothing in the record that would indicate fraud, duress, undue influence or mistake,

breach of a fiduciary duty, or wrongful disposition of another's property.  Indeed,

Hampton acknowledges that "[t]he evidence ... indicates that Townsel received all the

bank statements and controlled the checkbooks to his account."  In addition, although

whether two individuals have a confidential relationship is ordinarily a question of fact,

*Lucas*, 61 Ark. App. at 34, 962 S.W.2d at 390, Hampton has not pointed to anything that

would demonstrate any sort of confidential relationship.

   Hampton may believe that "anything that was my dad's, now that he's gone, is

mine" but that belief doesn't negate or supercede well-established law that to impose a

constructive trust, there must be full, clear and convincing evidence leaving no doubt with

respect to the necessary facts.  No such evidence has been presented.

III.

For the foregoing reasons, the Court grants Lamb's motion for summary judgment [doc.#37].  The Court directs the Clerk of Court to distribute by check payable to ArbertDella Lamb all funds and any accrued interest deposited into the registry of the Court in this action.  The check shall be mailed to Lamb's attorney, Eric Buchanan.  The Court will enter judgment accordingly.[6]

IT IS SO ORDERED this 28th day of February 2017.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

---

[6] The Clerk of Court is directed to provide a copy of this Opinion and Order to the financial section of the Court.